UNITED STATES BANKRUPTCY COURT
DISTRICT OF MAINE

|  |  |
|---|---|
| In re:<br><br>William C. Murphy,<br><br>    Debtor | Chapter 7<br>Case No. 05-22363 |
| William C. Murphy,<br><br>    Plaintiff<br><br>v.<br><br>United States Department of the Treasury,<br>Internal Revenue Service,<br><br>    Defendant | Adv. Proc. No. 11-2020 |

**I. Introduction**

    For chapter 7 debtors, a discharge order relieving them of pre-petition personal debt and providing them a "fresh start" is, when earned, the deserved result. Their discharge is protected by a statutory precept broadly enjoining creditors from commencing or continuing actions to collect, recover, or offset discharged debt. This discharge injunction is enforceable by contempt. A creditor willfully violates the injunction, and can be called to answer for it, when, knowing of the debtor's discharge, it intentionally undertakes action to collect discharged debt. All this is plain. The question posed by this case is whether the Internal Revenue Service is held to the same standard as any other creditor when a discharged debtor invokes 26 U.S.C. § 7433, asking the bankruptcy court to award damages on account of IRS employees' willful violation of the

1

discharge injunction.

In this case, the answer is "yes." The IRS is liable for damages occasioned by the intentional acts of its agents who were aware of William Murphy's discharge. On cross motions for partial summary judgment seeking a determination of liability, I conclude that the IRS is liable for damages arising from violations of the injunction protecting Murphy's fresh start. The case will be set for trial on damages.

## II. Background

William Murphy filed for chapter 7 relief on October 13, 2005. He scheduled federal income tax obligations for tax years 1993, 1994, 1996, 1997, 1998, 2000, and 2001among his debts. Murphy received his discharge on February 14, 2006. As with all chapter 7 discharges, Murphy's discharge was not absolute. Consistent with §§ 523 and 727,[1] it was subject to exceptions - some self-executing and some not. More specifically, Murphy's discharge order stated that debts for "most" taxes were not discharged.[2]

Following Murphy's discharge, the IRS informed him that it considered the pre-petition tax obligations he had scheduled to be excepted from discharge. He was told that collection

---

[1] Unless otherwise indicated, all citations to statutory sections are to the Bankruptcy Reform Act of 1978, as amended, 11 U.S.C. § 101 et seq. ("Bankruptcy Code" or "Code").

[2] Case No. 05-22363, Dkt. Entry # 6, Feb. 6, 2006. The discharge exception that pertains is found is § 523(a)(1):

> (a) A discharge under section 727 ... of this title does not discharge an individual debtor from any debt -
> (1) for a tax or a customs duty -
>     (A) of the kind and for the periods specified in section 507(a)(3) or 507(a)(8) of this title, whether or not a claim for such tax was filed or allowed;
>     (B) with respect to which a return, or equivalent report or notice, if required -
>         (i) was not filed or given; or
>         (ii) was filed or given after the date on which such return, report, or notice was last due, under applicable law or under any extension, and after two years before the date of the filing of the petition; or
>     (C) with respect to which the debtor made a fraudulent return or willfully attempted in

efforts would ensue.

Murphy then reopened his case[3] and filed an adversary action,[4] seeking a determination that the scheduled tax obligations were comprehended by his discharge, together with an award of damages occasioned by the IRS's post-discharge collection activities.

In the course, Murphy and the IRS were required to file a joint pretrial scheduling order,[5] but they could not agree on fundamental issues, including the state of the pleadings and burdens of proof.  I determined the legal and factual issues to be as  follow:

**As articulated by Murphy:**

    1.  Did the discharge Murphy received on February 14, 2006, discharge his income tax obligations for the tax years 1993, 1994, 1996, 1997, 1998, 2000, and 2001?

    2.  Did the IRS violate the discharge injunction?

    3.  Were any of the tax obligations identified above excepted from the discharge pursuant to Section 523(a)(1)(B) for failure to file a return?

    4.  Were any of the tax obligations identified above excepted from the discharge pursuant to Section 523(a)(1)(C) for filing a fraudulent return?

    5.  Were any of the tax obligations identified above excepted from the discharge pursuant to Section 523(a)(1)(C) for willfully attempting to evade or defeat such tax?

**As expanded upon by the IRS:**

    6.  Were any of the tax obligations identified above excepted from the discharge pursuant to § 523(a)(1)(B) because a tax return was filed late and filed after two years before the date of the filing of the petition?

---

      any manner to evade or defeat such tax
[3] Case No. 05-22363, Dkt. Entry # 9, Aug. 14, 2009.
[4] Adv. Pr. 09-2042, filed Aug. 14, 2009.
[5] D. Me. L. Bankr. R. 7016-1(b)(2).

> 7. Were any of the tax obligations identified above excepted from the discharge pursuant to Section 523(a)(1)(C) for willfully attempting in any manner to evade or defeat such tax?[6]

After conferring with counsel, I entered a pretrial scheduling order, and added the following:

> IMPORTANT ADDITIONAL NOTE: The court considers that the Plaintiff [Murphy] bears the burden of proving a discharge issued. The Defendant [IRS] bears the burden of proving, by a preponderance, the applicability of a discharge exception to the debts at issue. Objections to this allocation must be made, if at all, by motion filed within 14 days of this date.[7]

The IRS made no complaint and the case proceeded. But the IRS did not budge from its position that Murphy was tasked with proving that none of § 523(a)(1)'s discharge exceptions applied to his prepetition tax debts. It refused to identify any specific provision of § 523(a)(1) to support its assertion that the debts survived discharge.[8] As the case moved forward, Murphy was forced to obtain an order compelling discovery for even the most obviously pertinent information in the IRS's files.[9]

Murphy's prayer for damages was dismissed, without prejudice, by stipulation.[10] And the parties agreed the count seeking injunctive relief was unnecessary, as the IRS had agreed to stand still until all other issues were put to rest.[11] Murphy moved for summary judgment, asking for a final determination that his discharge embraced the tax debt and for relief addressing the way in

---

[6] The scheduling order incorporated legal contentions as framed by the parties in their pretrial submissions. Adv. Pr. 09-2042, Dkt. Entry # 19, Oct. 20, 2009.

[7] Id.

[8] The IRS'ss posture throughout was, essentially, that Murphy was a tax cheat and that any discharge exception that could pertain, did. Adv. Pr. 09-2042, Dkt. Entries #44 (Creditor's Objection to Summary Judgment), May 25, 2010; and #19 (Pretrial Scheduling Order), October 20, 2009.

[9] Adv. Pr. 09-2042, Dkt. Entry #35, February 9, 2010.

[10] Adv. Pr. 09-2042, Dkt. Entry #40, May 3, 2010.

[11] Order Granting Motion for Preliminary Injunction, Adv. Pr. 09-2042, Dkt. Entry #10, August 19, 2009.

which post-discharge tax payments had been applied by the IRS. In the face of IRS opposition that fell far short of applicable substantive and procedural standards,[12] summary judgment entered for Murphy as follows:

> This matter came before the Court on the Motion for Summary Judgment filed by the plaintiff, William C. Murphy. Upon notice and after hearing, this Court finds that there are no genuine issues of material fact in dispute and that Murphy is entitled to judgment as a matter of law. Accordingly, this Court hereby grants judgment in favor of Murphy as follows:
>
> 1. This declares that Murphy's income tax obligations for tax years, 1993, 1994, 1995, 1996, 1997, 1998, 2000, 2001 were discharged by the February 14, 2006 discharge Murphy received in this case.
>
> 2. This Court holds that the Internal Revenue Service wrongfully reversed payment of $16,500 made by Murphy toward his 2002 tax liability and applied it to the 1993 tax liability; and, therefore, this Court orders that said payment be reversed and reapplied to Murphy's 2002 tax liability effective as of the date originally made.
>
> 3. This Court holds that the Internal Revenue Service wrongfully reversed payment of $49,050 made by Murphy toward his 2003 tax liability and applied it to the 1994 tax liability; and therefore, this Court orders that said payment be reversed and reapplied to Murphy's 2003 tax liability effective as of the date originally made.[13]

The summary judgment order concluded the adversary proceeding finally. The IRS did not appeal. It has neither sought nor obtained relief from the judgment.

Murphy next pursued an administrative claim for damages.[14] Meeting with no success there, he initiated this action under 26 U.S.C. § 7433(c)(3), which entitles a discharged debtor to petition the bankruptcy court for damages when "any employee of the Internal Revenue Service

---

[12] See Fed. R. Bankr. P. 7056; D. Me. L. R. Bankr. R. 7056-1 (incorporating D. Me. L. R. 56)
[13] Adv. Pr. 09-2042, Dkt. Entry #48, June 22, 2010.
[14] See Adv. Pr. 11-2020, Dkt. Entries #7 (Stipulation Filed by IRS), April 22, 2011; and #8 (Order Staying Adversary Proceeding), April 25, 2011.

willfully violates any provision of section ... 524 of Title 11."

### III. The Summary Judgment Standard

Summary judgment is called for when there is "no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." Gerald v. Univ. of P.R., 707 F.3d 7, 16 (1st Cir.2013) (quoting Martínez–Burgos v. Guayama Corp., 656 F.3d 7, 11 (1st Cir.2011)); see Fed.R.Civ.P. 56(a). "The presence of cross-motions for summary judgment neither dilutes nor distorts this standard of review." Mandel v. Boston Phoenix, Inc., 456 F.3d 198, 205 (1st Cir.2006); see Atwater v. Chester, __ F.3d __, 2013 WL 5290019 (1st Cir. Sept. 20, 2013); Fed. R. Civ. P. 56.

Our local rules spell out formal requirements for summary judgment practice in exquisite detail. See D. Me. L. Bankr. R. 7056-1, D. Me. L. R. 56. Notably,

> **(b) Supporting Statement of Material Facts.** A motion for summary judgment shall be supported by a separate, short, and concise statement of material facts, each set forth in a separately numbered paragraph(s), as to which the moving party contends there is no genuine issue of material fact to be tried. Each fact asserted in the statement shall be simply and directly stated in narrative without footnotes or tables and shall be supported by a record citation ....

Although the parties' submissions, more particularly those of the IRS, fail to abide by the requirements of the rules,[15] I can navigate the morass. The question of liability, which is all that is before me today, is not so complex as the IRS would have it.

---

[15] The IRS's initial statement of material facts contains paragraphs setting forth multiple "facts," often mixed with explanation/argument, accompanied by no fewer than nine footnotes and sixty-nine exhibits. Adv. Pr. 11-2-020, Dkt. #68, May 1, 2013.

**IV.** **The Statutes**

Murphy argues that the IRS's post discharge collection activity is actionable in this court under §7433 of Title 26 U.S.C.:

§7433. Civil damages for certain unauthorized collection actions

(a) In general

If, in connection with any collection of Federal tax with respect to a taxpayer, any officer or employee of the Internal Revenue Service recklessly or intentionally, or by reason of negligence, disregards any provision of this title, or any regulation promulgated under this title, such taxpayer may bring a civil action for damages against the United States in a district court of the United States. Except as provided in section 7432, such civil action shall be the exclusive remedy for recovering damages resulting from such actions.

(b) Damages

In any action brought under subsection (a) or petition filed under subsection (e), upon a finding of liability on the part of the defendant, the defendant shall be liable to the plaintiff in an amount equal to the lesser of $1,000,000 ($100,000, in the case of negligence) or the sum of—

> (1) actual, direct economic damages sustained by the plaintiff as a proximate result of the reckless or intentional or negligent actions of the officer or employee, and

> (2) the costs of the action.

(c) Payment authority

Claims pursuant to this section shall be payable out of funds appropriated under section 1304 of title 31, United States Code.

(d) Limitations

> (1) Requirement that administrative remedies be exhausted
> A judgment for damages shall not be awarded under subsection (b) unless the court determines that the plaintiff

7

has exhausted the administrative remedies available to such plaintiff within the Internal Revenue Service.

(2) Mitigation of damages
The amount of damages awarded under subsection (b)(1) shall be reduced by the amount of such damages which could have reasonably been mitigated by the plaintiff.

(3) Period for bringing action
Notwithstanding any other provision of law, an action to enforce liability created under this section may be brought without regard to the amount in controversy and may be brought only within 2 years after the date the right of action accrues.

**(e) Actions for violations of certain bankruptcy procedures**

**(1) In general**
**If, in connection with any collection of Federal tax with respect to a taxpayer, any officer or employee of the Internal Revenue Service willfully violates any provision of section 362 (relating to automatic stay) or 524 (relating to effect of discharge) of title 11, United States Code (or any successor provision), or any regulation promulgated under such provision, such taxpayer may petition the bankruptcy court to recover damages against the United States.**

(2) Remedy to be exclusive

(A) In general
Except as provided in subparagraph (B), notwithstanding section 105 of such title 11, such petition shall be the exclusive remedy for recovering damages resulting from such actions.
(B) Certain other actions permitted
Subparagraph (A) shall not apply to an action under section 362(h) of such title 11 for a violation of a stay provided by section 362 of such title; except that—
(i) administrative and litigation costs in connection with such an action may only be awarded under section 7430; and

8

> (ii) administrative costs may be awarded only
> if incurred on or after the date that the
> bankruptcy petition is filed.

26 U.S.C. § 7433 (emphasis supplied).

The operative portion of Code § 524 (the entirety of which 26 U.S.C. § 7433(e)(1) incorporates) reads:

> (a) A discharge in a case under this title -
> \* \* \*
> (2) operates as an injunction against the commencement or continuation of an action, the employment of process, or an act, to collect, recover or offset any ... debt [discharged under section 727 ...] as a personal liability of the debtor, whether or not discharge of such debt is waived;
> \* \* \*

11 U.S.C. § 524(a)(2).

**V. Discussion**

The IRS contends that it is not liable to Murphy for two reasons. First, it asserts that his complaint came too late - that it is barred by the two-year limitation set out in 26 U.S.C. § 7433(d)(3). Second, it urges that its post-petition actions did not constitute "willful violation" of 11 U.S.C. § 524's injunction within the meaning of 26 U.S.C. § 7433. It is wrong on both counts.

**A. Limitations**

After pursuing (and exhausting) his administrative remedies as required by 26 U.S.C. § 7433(c)(1), Murphy filed this complaint for damages on February 18, 2011. Thus, suit was initiated within two years of the IRS's levy notices issued February 20, 2009. It is, therefore, timely.

### 1. Accrual of Cause of Action

The IRS asserts that Murphy's right of action accrued well before the February 20, 2009, levy notices issued. It contends that Murphy's cause of action accrued when, notwithstanding Murphy's former counsel's insistence that the tax debt was discharged, it insisted that the liabilities were excepted from the discharge. It further insisted that it was Murphy's burden to file an action to determine their status. Charitably characterized, the IRS's position is simply wrongheaded.

The earliest that Murphy could have become aware that the IRS was actually initiating post-discharge collection action was the date the IRS levied against him: February 20, 2009. That was the triggering event. It was at that point that the IRS's stated intention manifested as action inimical to Murphy's rights. Thus, if Murphy's complaint was filed on February 18, 2011, he initiated action within 26 U.S.C. § 7433(d)(3)'s two year limitation period.[16]

This is not a novel concept. For example, if neighbors disagree on the location of a boundary line, a cause of action for trespass does not accrue when first they argue, or even when one or the other pays a surveyor (or a title attorney) to investigate. The right of action comes into being upon action (e.g., wrongful possession or exclusion), not upon mere disagreement. Similarly, Murphy's claim did not accrue when the IRS - no matter how insistently - took issue with him. It accrued when he became aware that all the elements of a cause of action for violation of the discharge injunction were present. 26 C.F.R. § 301.7433-1(g) (a cause of action accrues when the taxpayer has had a reasonable opportunity to discover all essential elements of a

---

[16] As a consequence, it is unnecessary to address Murphy's argument that the "continuing wrong" doctrine extended or renewed the limitation period.

possible cause of action).

### 2. Date of Filing

The IRS asserts that, although the complaint was stamped as "filed" when the bankruptcy court received it on February 18, 2011, it was not docketed until February 28, 2011, when Murphy's bankruptcy case was formally reopened. In its view, the date that counts is the formal docketing date. In federal practice, complaints are "filed" when received by the clerk's office and date-stamped. See Desroches v. U.S. Postal Service, 631 F.Supp. 1375, 1381 (D.N.H.1986). To rule otherwise would "unfairly penalize punctual plaintiffs for unavoidable delays in processing complaints" by the clerk's office. Id. "[T]he reopening of a case is a ministerial act which allows the file to be retrieved so the court can receive a new request for relief; the reopening, by itself, has no independent legal significance ...." In re Anderson, 2011 WL 5830599 (Bankr.D.Mass.)(Nov. 21, 2011).

Murphy's complaint was filed, and this action was initiated, on February 18, 2011, within two years following issuance of the first post-discharge levy notices. The fact that his bankruptcy case was not reopened, and the complaint was not lodged on the docket until February 28, 2011, is of no moment.[17]

### B. Willful Violation

#### 1. The IRS's "Good Faith" Model

The best way to appreciate the IRS's view of the case is the "Overview and Background"

---

[17] I note that the "open" or "closed" status of Murphy's bankruptcy case does not impact this court's jurisdiction to hear this adversary proceeding in any way. Disputes addressing discharge injunction violations most commonly arise well after formal closure of a debtor's bankruptcy case. The matter "arises under" 11 U.S.C. § 524. See 28 U.S.C. § 1334 (b).

section of its memorandum in support of summary judgment:

> In view of the extensive statement of material facts being filed herewith pursuant to District Court Local Rule 56(b) [SMF], we provide only a brief capsulization here of the factual predicate for the government's insistence that no IRS employees willfully violated BC [Bankruptcy Code] § 524 within the meaning of IRC [Internal Revenue Code] 7433(e). The SMF and the exhibits attached to it, along with the Declaration of Walter Boguslawski and the exhibits attached thereto, confirm that the IRS and the former Assistant United States Attorney ("former AUSA") assigned to the Chapter 7 case: (I) repeatedly informed the debtor and his representatives of their position that the taxes were excepted from discharge; (ii) repeatedly told them that the debtor, if he disagreed, should file a proceeding to determine dischargeability (and that the IRS was not required to do so); and (iii) gave the debtor ample warning that the IRS was going to levy to collect the liabilities of he did not commence such a proceeding. Despite the fact that this was conveyed as early as 2006 and consistently thereafter until the IRS actually issued levies on February 20, 2009, the debtor elected not to file an adversary complaint to determine dischargeability until August of 2009 - six months after the levies (and almost five months after their release) - whereupon the IRS immediately consented to a preliminary injunction pending the Court's determination of dischargeability.
>
> Moreover, this is not a case in which the IRS's theory of a discharge exception was based on a novel legal theory or wild speculation as to unknown facts. Instead, the IRS records and internal communications reflect that it initially notified the debtor of intent to levy only on any premise of nondischargeability with the concurrence of counsel (the former AUSA) after an investigation that included a considerable factual record of support for its view that the debtor had willfully attempted to defeat collection of the tax within the meaning of BC § 523(a)(1)(C). Indeed, the facts as viewed by the IRS met virtually all of the indicia reflected in established court precedents. [Footnote omitted.][18]

The IRS's position is that, as far as tax collection and § 523(a)(1)(C) goes, it retains the authority to make up its mind whether tax obligations are discharged, that it may act unilaterally

---

[18] Adv. Pr. 11-2042, Dkt. #69, May 1, 2013.

on the basis of its conclusions, and that it encounters no risk in doing so, as long as it has a "good faith" or "reasonable" basis for its conclusion. According to it, what matters for purposes of Murphy's 26 U.S.C. § 7433 action is only that the "IRS employees involved *reasonably believed* that the taxes were excepted from discharge after having investigated the facts relevant to that issue in good faith."[19]

To evaluate the IRS's position, the first step is to consider the regime under which most creditors' post-discharge conduct is considered. The next step is to consider whether there is something about the pertinent statutory model that requires claims against the IRS based on alleged violations of the discharge injunction be considered differently.

### 2. The Generally Applicable Discharge Injunction Violation Model

"Generally, a discharge in bankruptcy relieves a debtor from all pre-petition debt, and § 524(a) permanently enjoins creditor actions to collect discharged debts." Bessette v. AVCO Fin. Serv., 230 F.3d 439, 444 (1st Cir. 2000) (citing National Ins. Co. of North America v. NGC Settlement Trust & Asbestos Claims Management Corp. (In re National Gypsum Co.), 118 F.3d 1056, 1062 n. 13 (5th Cir.1997); Hardy v. United States (In re Hardy ), 97 F.3d 1384, 1388–89 (11th Cir.1996); In re Getzoff, 180 B.R. 572, 573 (9th Cir.B.A.P. 1995)). Although § 524 does not expressly set forth a private right of action, a bankruptcy court properly may enforce § 524(a)'s discharge injunction by invoking its equitable powers under § 105(a) as necessary or appropriate to assure its efficacy. Id at 445-46.

A creditor violates the injunction when, with knowledge of the discharge, it intends to take an action, and that action is determined to be an attempt to collect a discharged debt. Pratt v.

---

[19] Id. (Emphasis in original.)

13

GMAC, 462 F.3d 14, 21 (1st Cir. 2006).

To run afoul of the discharge injunction, a creditor need not expressly attempt to collect a discharged obligation.  It need not subjectively intend to violate the injunction. It is enough that its conduct objectively functions to coerce payment of discharged debt.  Id at 19-21.  This is true even where the creditor mistakenly believes it is doing nothing more than enforcing rights that survived discharge.  Id at 20 (creditor that insisted on enforcing lien rights in a manner that was coercive where such action was without independent economic value to it).  Knowledge of the discharge, plus "general intent" to do the prohibited act constitutes the violation.  Id at 21, see also, McComb v. Jacksonville Paper Co., 336 U.S. 187, 69 S.Ct. 497 (1949), (stating: "The absence of willfulness does not relieve from civil contempt. […] Since the purpose is remedial, it matters not with what intent the defendant did the prohibited act. […] An act does not cease to be a violation of a law and of a decree merely because it may have been done innocently. The force and vitality of judicial decrees derive from more robust sanctions.") See also, In re Hardy, 97 F.3d 1384 at 1390; Kight v. Dept. of Treas./Internal Rev. Svc. (In re Kight), 460 B.R. 555, 565 (Bankr.M.D. FL. 2011); Matthews v. United States (In re Matthews), 184 B.R. 594, 598 (Bankr.S.D.AL. 1995).

In Murphy's 2009 action, the IRS was invited to demonstrate that Murphy's pre-petition tax obligations escaped discharge.  It declined the invitation.  Final judgment entered against it.  That judgment put aside the question of damages, but determined that the scope of Murphy's discharge encompassed his tax debt and ordered remedial measures to rectify one aspect of the IRS's wrongful conduct:  reversing its crediting of post-bankruptcy payments from discharged obligations to post-petition obligations.

Thus, it has already been finally determined that (1) the tax debt was discharged; (2) the IRS knew of the discharge; and (3) with knowledge of the discharge, it took action violative of the discharge injunction. Thus, if this were a case with any defendant other than the IRS, sanctions - including compensatory sanctions - would issue.

### 3. The Model for Considering IRS Liability - 26 U.S.C. § 7433

So, is there something in the law that provides the IRS with defenses (to a damages claim) that are not available to other creditors? The only way the IRS can avoid liability for damages is if the words "willfully violates" in 26 U.S.C. § 7433(e) mean something different than they do in applications of Bankruptcy Code § 524 (discharge injunction violations as enforced via § 105 in First Circuit case law, supra). Alleged violations of § 362's automatic stay are scrutinized under the same model. See Fleet Mortg. Group, Inc. v. Kaneb (In re Kaneb), 196 F.3d 265, 268 (1st Cir. 1999).

Certainly, as the IRS stresses, a private party may not sue the United States for damages absent a waiver of sovereign immunity. See United States v. Nordic Village, Inc., 503 U.S. 30, 33. 112 S.Ct. 1011, 117 L.Ed.2d 181 (1992). Therefore, Murphy may not sue the IRS for damages associated with violations of his discharge injunction unless there is a specific statutory waiver that will support any such award. See United States v. Mitchell, 463 U.S. 206, 212, 103 S.Ct. 2961, 2965 (1983). Clearly, 11 U.S.C. § 106 and 26 U.S.C. §7433 create such a waiver.

Under § 106, sovereign immunity is abrogated for a governmental unit with respect to several sections of the Bankruptcy Code, including § 524.[20] That waiver of immunity is not

---

[20] **11 U.S.C. § 106. Waiver of sovereign immunity.**
    (a) Notwithstanding an assertion of sovereign immunity, sovereign immunity is abrogated as to a

without limits. For example, a bankruptcy court may not award punitive damages against a governmental unit. 11 U.S.C. § 106 (a)(3). A bankruptcy court, may, however, issue a judgment for money damages against the government based on a violation of § 524. It may only do so in compliance with applicable nonbankruptcy law. 11 U.S.C. § 106 (a)(4).

Title 26 § 7433, entitled "Civil damages for certain unauthorized collections actions," provides applicable nonbankruptcy law governing a private party's claim for damages from the IRS for violations of the discharge injunction. See 26 U.S.C. § 7433, supra. In 1998, Congress amended 26 U.S.C. § 7433 by adding subsection (e), which provides: "If, in connection with any collection of Federal Tax with respect to a taxpayer, any officer or employee of the Internal Revenue Service willfully violates any provision of section 362 or 524 of title 11, United States Code … such taxpayer may petition the bankruptcy court to recover damages against the United States." The subsection continues: "Notwithstanding section 105 of such title 11, such petition

---

governmental unit to the extent set forth in this section with respect to the following:
(1) Sections 105, 106, ... 362, ... 524 ... of this title.

(2) The court may hear and determine any issue arising with respect to the application of such sections to governmental units.

(3) The court may issue against a governmental unit an order, process, or judgment under such section or the Federal Rules of Bankruptcy Procedure, including an order or judgment awarding a money recovery, but not including an award of punitive damages. Such order or judgment for costs or fees under this title or the Federal Rules of Bankruptcy Procedure against any governmental unit shall be consistent with the provisions and limitations of section 2412(d)(2)(A) of title 28.

(4) The enforcement of any such order, process, or judgment against any governmental unit shall be consistent with appropriate nonbankruptcy law applicable to such governmental unit and, in the case of a money judgment against the United States, shall be paid as I it is a judgment rendered by a district court of the United States.

(5) Nothing in this section shall create any substantive claim for relief or cause of action not otherwise existing under this title, the Federal Rules of Bankruptcy Procedure, or nonbankruptcy law.

shall be the exclusive remedy for recovering damages resulting from such actions." 26 U.S.C. § 7433 (e)(2)(A). This procedure is exactly what Murphy has invoked.

The only way the IRS can avoid liability is if 26 U.S.C. § 7433 imposes a novel standard governing the IRS's post-discharge conduct. The IRS asserts that the words "willfully violates" in 26 U.S.C. § 7433(e) mean something different, something more forgiving, than they do in accepted applications of Bankruptcy Code §§ 105 and 524 in the First Circuit. However, I cannot see how that is possible. Title 26 § 7433 employs the term "willfully violates," the same term employed in the Bankruptcy Code and in controlling case law. The identical language appears without qualification.

Title 26 § 7433 outlines the process for pursuing damages against a sovereign entity which would otherwise be immune. It can not reasonably be viewed as setting out a unique, more demanding, standard for determining liability. Indeed, the scant legislative background for 26 U.S.C. § 7433's enactment (as a component of a bill denominated the "Taxpayers' Bill of Rights") indicates that Congress' intention was that, insofar as honoring a debtor's discharge was concerned, the IRS should be treated no differently than any other creditor. See, 144 Cong. Rec. S7621-05, S7623.

Thus, the IRS is liable for violating Murphy's discharge injunction via §§ 106 and 524. A money judgment may enter pursuant to 26 U.S.C. § 7433. See, e.g., Kovacs v. United States, 614 F.3d 666, 672-73 (7th Cir. 2010); In re Kight, 460 B.R. 555, 565; Jacoway v. Dep't of Treas. (In re Graycarr, Inc.), 330 B.R. 741, 747 (Bankr.W.D.Ark.2005); In re Lowthorp, 332 B.R. 656 (Bankr.M.D.Fla2005). Cf. Duby v. United States, 451 B.R. 664 (1st Cir. B.A.P. 2011) (discussing whether emotional distress damages are available against the United States after a finding of a

violation of the discharge injunction via §106) (citing United States v. Rivera Torres (In re Rivera Torres), 432 F.3d 20 (1st Cir.2005)); In re Hardy, 97 F.3d at 1391 (attorney's fee awards made via § 106 must be consistent with the limitations established by 26 U.S.C. § 7430).

If any doubt remains that the IRS's "good faith" defense is not appropriate for determining liability under § 524, one need only look to 26 U.S.C. § 7430. That section addresses potential attorney's fee awards in cases where the IRS is determined to have violated the discharge injunction. Generally, a bankruptcy court may award the plaintiff its fees if the plaintiff is the prevailing party as defined by 26 U.S.C. § 7430 (c)(4). A party does not "prevail" if the IRS establishes that its position was "substantially justified". 26 U.S.C. § 7430 (c)(4)(B). The section, therefore, acknowledges that liability under the Code may flow from good faith actions of the IRS, but that "substantial justification" may mitigate the damages available to the aggrieved party. The IRS has festooned the record with extensive information and argument that is immaterial to the issue of liability, but which *may* have pertinence to damages and their mitigation.

**VI. Conclusion**

The chapter 7 discharge is peppered with exceptions. Most are self-executing,[21] a few are not.[22] Creditors who continue collection efforts post-discharge are betting that an exception applies. But they do so at their peril. If they are wrong, their intended acts (innocent or not) will buy them trouble. Any other paradigm – such as the one the IRS has put forward here – would render the fresh start fragile. Debtors, rather than starting fresh, would be burdened with fending

---

[21] E.g., § 523(a)(1), (3), (5), (7), (10), (11).
[22] E.g., § 523(c)(1); Fed. R. Bankr. P. 4007.

off any manner of post-discharge collection attempts, all justified by the assertion of a "good faith" belief that a discharge exception applied.

The Bankruptcy Code's discharge injunction ensures a chapter 7 discharge's efficacy. The IRS, in this realm, is but another creditor. It enjoys no special status; it is due no special favor.[23]

Partial summary judgment will enter determining the issue of liability for Murphy, and against the IRS. The matter will proceed to trial. A separate order will issue forthwith.

  December 20, 2013                                     /s/ James B. Haines, Jr.
Date                                                             James B. Haines, Jr.
                                                                        U.S. Bankruptcy Judge

---

[23] The IRS has set out sundry reasons why the model embraced here is unworkable for it. But this comes too late. Murphy did as the IRS bid: he sought and obtained a determination that his prepetition tax debts were discharged. The IRS had every opportunity then to present the evidence it now cites in support of its view that they were not. It chose not to engage then – and will now face the consequences.